### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **TIFFANY PELHAM,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | |
| **vs.** | **)** | **CIVIL ACTION NO. 12-166-CG-C** |
| | **)** | |
| **CITY OF DAPHNE, ALABAMA,** | **)** | |
| **and DAVID CARPENTER, in his** | **)** | |
| **individual and official capacities,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on defendants' motion for summary judgment (Doc. 53), plaintiff's amended response (Doc. 64) and defendants' reply (Doc. 65). The court finds that, viewing the facts in the light most favorable to plaintiff, plaintiff has established a prima facie case of retaliation and has offered sufficient evidence for a jury to find that defendants' proffered legitimate reasons for their actions are pretextual. Therefore, defendants' motion for summary judgment will be denied as to Count I of the complaint. Because plaintiff failed to contest the motion for summary judgment as to Counts II and III, summary judgment will be granted as to those counts.

## FACTS

Plaintiff, Tiffany Pelham, filed this case asserting a Title VII retaliation claim against the City of Daphne and asserting claims for injunctive and declaratory relief against both the City of Daphne and David Carpenter.[1] (Doc. 21, pp. 5-16).  Plaintiff was employed by the Montgomery Police Department from March 2002 to September 2004. (Doc. 54-2, ¶ 3; Doc. 54-3, ¶ 3).  During her employment with the Montgomery Police, plaintiff had several job-related issues that were documented in her employee file.  Plaintiff was written up several times for calling in sick, was involved in an automobile accident in which a citizen was almost killed, she failed to pass her firearms qualifications tests at least three

---

[1]   As the defendants pointed out in their brief, Pelham's complaint is framed in three counts. Count I is her Title VII retaliation claim against Daphne, and Counts II and III are her claims for injunctive and declaratory relief against both Daphne and Chief Carpenter in his individual and official capacity. As the defendants further pointed out because the claims against Chief Carpenter in his official capacity are redundant and duplicative of the same claims against Daphne itself, the former are due to be dismissed as a matter of law. (Doc. 55 at p.2 n.2).

In addition to moving for summary judgment on the Title VII retaliation claim in Count I, Daphne (joined by Chief Carpenter) also moved for summary judgment on the injunctive and declaratory relief claims in Counts II and III. (Doc. 55 at pp.22-25). In her response, however, Pelham failed to dispute or even address the defendants' grounds for summary judgment on Counts II and III. Accordingly, Pelham has abandoned these claims. See e.g., Mason v. Mitchell's Contracting Service, LLC, 2011 U.S. Dist. LEXIS 102938, *47-48 (S.D. Ala. Sept.12, 2011) (Granade, J.) (citing, among other authorities, Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1326 (11th Cir. 2000)). As a result, both Daphne and Chief Carpenter (in his official and individual capacity) are entitled to summary judgment on Counts 2 and 3.

times, failed to properly report a domestic violence incident and she resigned without working out her two-week notice of resignation. (Doc. 54-2, ¶4; Doc. 54-1, pp. 34-44). Plaintiff does not remember being written up for abusing sick leave. (Doc. 54-1, pp. 34, 36). Following plaintiff's resignation, one of her supervisors, Kevin J. Murphy, wrote a memo which was placed in plaintiff's personnel file recommending that she not be considered for re-employment should she ever apply in the future. (Doc. 54-2, ¶ 4, & p. 6).

Plaintiff was hired as a police officer for Daphne in July 2006. (Doc. 54-1, pp. 4-5). Plaintiff signed an agreement with Daphne stating that in the event she terminated her employment within the first two years, she would be obligated to reimburse Daphne $1,800 in damages to cover certain costs and expenses it incurred in hiring and training her. (Doc. 54-1, pp. 31-33; Doc. 54-4, ¶ 12). During her employment with Daphne, plaintiff initiated a sexual harassment complaint against a co-worker. (Doc. 54-1, p. 6). Daphne investigated the matter and terminated the employment of the accused co-worker. (Doc. 54-1, p. 7). On November 8, 2006, Pelham gave notice that she was voluntarily resigning her employment due to recent changes in her personal life, unrelated to her sexual harassment claim. (Doc. 54-1, pp. 8-9; Doc. 54-6). Although plaintiff's resignations letter stated she would like to work out a two-week notice, she did not return to work after November 8, 2006. (Doc. 54-7). Daphne sued plaintiff in small claims

court to recover the damages she owed under her contract and obtained a judgment against plaintiff in the amount of $1,800 plus court costs. (Doc. 54-9).

In 2007, plaintiff began working for the police department of the City of Millbrook, Alabama and shortly thereafter went to work for the City of Prattville, Alabama. (Doc. 54-1, pp. 13-14; 28-29).

In January 2009, plaintiff filed a civil complaint in this court, Pelham v. City of Daphne, 1:09-cv-00041-WS-M ("Pelham I"), alleging retaliation related to her prior sexual harassment claim. (Doc. 54-1, p. 17; Doc. 54-5). The parties settled Pelham I in May 2009 and signed a release and settlement agreement. (Doc. 54-10). The release and settlement agreement included the following condition:

> d)      the dispersal by the CITY OF DAPHNE of a neutral job recommendation for PLAINTIFF concerning her employment with the City of Daphne Police Department. Such neutral job recommendation shall only include the date of PLAINTIFF'S employment with the City of Daphne Police Department, PLAINTIFF'S job description, and the rate of pay PLAINTIFF received,

(Doc. 54-10, p. 2).

In 2010, plaintiff applied for re-employment with the Montgomery Police Department. Montgomery's recruiting coordinator, Corporal Maurice Johnson, interviewed plaintiff and contacted plaintiff's previous law enforcement employers. (Doc. 61-12, Doc. 54-14, pp. 4, 5). Johnson spoke with the Milbrook and Prattville Police Departments which both provided information regarding plaintiff's dates of employment and whether she had any disciplinary actions against her while she

was there. (Doc. 54-15).  By letter dated April 12, 2010, the Montgomery Police Department forwarded a form stating that plaintiff had applied for a position and requesting that Daphne Police Department:

> Please check your files and let us know whether or not this person has ever come to your attention.  A brief synopsis of any derogatory information will assist us in determining his or her suitability for employment. … In the event that you have an arrest record on this applicant, we would appreciate any police reports you are able to locate.

(Doc. 61-13, p. 2).  The form included spaces for the Daphne Police Department to list any "Criminal Arrest Record," "Traffic," "Juvenile," "Complaints By/Against the Applicant," or "other." Id.  The form states that an authorization and release form was attached. Id.  The form indicates that the Daphne Police Department stamped the form with a statement that their records division "indicates NO RECORD." Id. The stamped portion is signed by "L. Johnson" and dated April 22, 2010. Id. Plaintiff submitted identical forms that are addressed to the Baldwin County Sheriff's Department, Elmore County Sheriff's Department and Montgomery County Sheriff's Department. (Doc. 61-3, pp. 3-5).  The Baldwin County and Elmore County forms were similarly stamped and signed or hand written in that there was "no record" (Doc. 61-3, pp. 4-5) and the Baldwin County form simply left the area to be filled out blank and was signed by a Lieutenant for the Montgomery Police Department. (Doc. 61-13, p. 3).  The authorization and release attached to the records requests was signed by plaintiff stated the following:

5

> I, Tiffany R. Pelham, … hereby authorize and request every medical doctor, school official, and every other person, firm, office, corporation, association, organization, or other institution having control of any documents, records or other information pertaining to me relevant to my good moral character and fitness to perform the responsibilities of the position for which I have applied, to furnish the originals or copies of any such documents records, certificates, letters, and other information including but not limited to any and all medical reports, laboratory reports, x-rays, or clinical abstracts which may have been made or prepared pursuant to or in connection with any examination(s), consultation(s), test(s) or evaluation(s) of the undersigned. …
> I hereby release and exonerate every medical doctor, school official, and every person, firm, officer, corporation, association, organization, or institution which shall comply in good faith with the authorization and request made herein from any and all liability of every nature and kind growing out of or in anywise pertaining to the furnishing or inspection of such documents, records, and other information or the investigation made by said Department. …

(Doc. 61-15, p. 4).

According to his notes, Johnson contacted Daphne and spoke to Chief Carpenter on April 13, 2010 and requested information about what type of worker plaintiff was and whether she had any disciplinary actions. (Doc. 54-14, p. 8). Johnson claims he did not request her personnel file, but Carpenter recalls that Johnson requested a copy of her Daphne personnel file. (Doc. 54-14, pp. 8-9; Doc. 61-9, p. 4).  Carpenter told Johnson that he could not provide him with any information about plaintiff and he suggested that Johnson contact Daphne's Human Resources Department. (Doc. 54-15).  Johnson spoke with Daphne's Human Resource Director who told him that they could only provide him with her dates of employment. (Doc. 54-15).  Johnson removed plaintiff from the hiring process for failure to complete

processing because he was unable to obtain employment information relating to her work history at Daphne Police Department. (Doc. 54-15). According to Johnson, plaintiff's personnel file was not an issue. (Doc. 54-14, pp. 10, 11, 12). However plaintiff testified that Johnson[2] told her that "if we can't get access to your personnel file, then we have to take you out of the hiring process." (Doc. 64-1, p. 30). Johnson does not remember ever telling plaintiff that she would not be hired without her personnel file. (Doc. 54-14, p. 12). Plaintiff reports that she then spoke with Major Brown and was similarly told that without her personnel file she would be removed from the hiring process because it makes her look like she has something to hide. (Doc. 64-1, p. 30). Plaintiff spoke with Jay Ross, counsel for Daphne in Pelham I, who told plaintiff that he advised Daphne to release her file. (Doc. 61-10, ¶ 11).

On September 7, 2010, plaintiff called Chief Murphy of the Montgomery Police Department expressing her interest in becoming re-employed there. (Doc. 54-2, ¶ 7). Murphy told her to send him a letter requesting such, which is his standard practice. (Doc. 54-2, ¶ 7). According to Murphy he never discussed the subject of her

---

[2] The court notes that plaintiff did not provide the court with a copy of the portion of plaintiff's testimony which would identify who plaintiff testified made this statement. As support for this fact, plaintiff cites to page 124 of her deposition which begins in the middle of a response. The parties did not provide page 123 of plaintiff's deposition which presumably would have included the question asked and the beginning of plaintiff's response. However, since defendants have not suggested that plaintiff's description of her testimony was inaccurate, the court will assume that plaintiff testified that Johnson made the statement.

personnel file with her. (Doc. 54-2, ¶ 7).  In October 2010, plaintiff wrote Chief

Murphy at the Montgomery Police Department. (Doc. 61-17).   In the letter, plaintiff

reminded Murphy that she had previously expressed her interest in coming back to

work there, explained her situation and stated that she had been advised by

Montgomery that she would be taken out of the hiring process because Daphne

would not provide her personnel file. (Doc. 61-17).   The letter requests that plaintiff

be allowed to come speak to Murphy to see if there is anything that could be done so

that she can come back to Montgomery. (Doc. 61-17).  Murphy forwarded the letter

to Major Hicks who is in charge of recruiting and training. (Doc. 54-2, ¶ 8).  Hicks

reviewed plaintiff's file, noticed job-related issues from her prior employment there

and noted that Murphy (who at that time was one of plaintiff's supervisors) had

recommended that she not be considered for re-employment. (Doc. 54-3, ¶ 5).

On October 22, 2010, a meeting was held of senior staff of the Montgomery

Police Department at which Hicks advised the staff of plaintiff's request for re-

employment along with a brief review of her work history there. (Doc. 54-3, ¶ 6).  A

vote was held and it was unanimously decided that plaintiff should not be re-hired.

(Doc. 54-3, ¶ 6).  Hicks reportedly then prepared and sent plaintiff a letter, dated

October 22, 2010, stating that their staff had reviewed her personnel file and voted

to decline her request for re-employment "due to poor past work performance with

the Montgomery Police Department." (Doc. 54-3, ¶ 7; Doc. 61-16).  However, plaintiff asserts that she does not recall seeing the letter.[3]

Plaintiff reports that a document from the

Montgomery Police Department's records shows that two employees stated that she was a good or "pretty good" officer when asked in June 2006. (Doc. 61-14).[4]

On October 29, 2010, plaintiff sent a letter to the Daphne Police Department requesting that they release to the Montgomery Police Department or to plaintiff a copy of her personnel file. (Doc. 61-7).  The letter includes the following statement:

> To the extent that you might claim my personnel file has sensitive information contained within it, I waive any rights I have to prevent disclosure of this file to the Montgomery Police Department.

(Doc. 61-7).  On November 1, 2010, Carpenter responded with a letter stating that he could not release her file per the court order in Pelham I. (Doc. 61-8).  The letter explains that plaintiff is "not being denied your file due to sensitive information but strictly because of a court order [in Pelham I]." (Doc. 61-8).

---

[3] The court notes that plaintiff has not provided any testimony or affidavit stating that she did not receive the letter, but the court presumes, since she has stated so in her brief, that plaintiff would testify at trial that she does not recall receiving the letter.

[4] There is no indication of the circumstances surrounding or the purpose of the document that reportedly contains these statements.  The document submitted is labeled "Case Action Summary Continuation" and is largely illegible as submitted.

9

## DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252.  The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the

court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir. 1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).  Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment."  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).  "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-

<u>Siegen</u>, 965 F.2d 994, 998 (11th Cir. 1992).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

**B. Retaliation Claim**

Title VII prohibits retaliation not only against current employees, but also against former employees-when the employee has filed a charge of discrimination against the employer. <u>Waters v. Home Depot U.S.A., Inc.</u>, 159 Fed.Appx. 943, 944, (11th Cir. 2005) (citing 42 U.S.C. § 2000e-3(a) and <u>Robinson v. Shell Oil Co.</u>, 519 U.S. 337, 117 S.Ct. 843, 849, 136 L.Ed.2d 808 (1997)).  A plaintiff may prove retaliation by relying on either direct, circumstantial, or statistical evidence.  <u>See</u> <u>Walker v. Nationsbank of Florida N.A.</u>, 53 F.3d 1548, 1555 (11th Cir. 1995).  Direct evidence is evidence which, "if believed, proves the existence of discriminatory motive 'without inference or presumption'" <u>Hamilton v. Montgomery County Bd. of Educ.</u>, 122 F.Supp.2d 1273, 1279 (M.D. Ala. 2000) (quoting <u>Carter v. Three Springs Residential Treatment</u>, 132 F.3d 635, 641 (11th Cir. 1998)).  As the U.S. District Court for the Middle District of Alabama explained:

> Not only must it be evidence of discriminatory 'actions or statements of an employer' but the actions or statements at issue must 'correlate to the discrimination or retaliation complained of by the employee.' Further, the statements 'must be made by a person involved in the challenged decision' and must not be subject to varying reasonable interpretations.

Id. (quoting Lane v. Ogden Entertainment, Inc., 13 F.Supp.2d 1261, 1274 (M.D. Ala.
1998)).   Plaintiff has submitted no direct evidence of retaliation.  None of the evidence
offered proves without inference or presumption that defendants engaged in the
actions at issue because plaintiff previously filed grievances or complaints.  Plaintiff's
claim relies solely on circumstantial evidence.

A plaintiff may attempt to show retaliation based on circumstantial evidence
through the application of the McDonnell Douglas burden-shifting analysis
established by the Supreme Court. McDonnell Douglas Corp. v. Green, 411 U.S. 792
(1973).  Under the McDonnell Douglas framework, a plaintiff must first raise an
inference of retaliation by establishing a prima facie case. See Chapman v. AI
Transport, 229 F.3d 1012, 1024 (11th Cir. 2000) (citing Combs v. Plantation Patterns,
106 F.3d 1519, 1527-28 (11th Cir. 1997)).

To establish a prima facie case of retaliation under Title VII, "the plaintiff must
show (1) that she engaged in statutorily protected expression; (2) that she suffered an
adverse employment action; and (3) that there is some causal relation between the two
events." Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1363 (11th Cir. 2007).  If a
plaintiff makes out a prima facie case of retaliation, "the burden shifts to the
defendant to rebut the presumption of retaliation by producing legitimate reasons for
the adverse employment action." Sullivan v. Nat'l R.R. Passenger Corp., 170 F.3d
1056, 1059 (11th Cir.1999); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792,

802–03 (1973).  Then, if the defendant offers legitimate reasons, the presumption of retaliation disappears and the burden shifts back to the plaintiff to show that the employer's proffered reasons for taking the adverse action were pretext for prohibited retaliatory conduct. Sullivan, 170 F.3d at 1059.

In the instant case, defendants do not deny that plaintiff can establish that she engaged in a statutorily protected expression by filing Pelham I and that she suffered an adverse employment action[5] when she was not hired by Montgomery Police Department.  However, defendants assert that plaintiff cannot establish the third prong of a prima facie case because there is no causal connection between Pelham I in 2009 and the Montgomery Police Department's decision not to re-employ plaintiff in 2010.

There appears to be no dispute that Daphne did not provide the personnel file until plaintiff filed the current lawsuit.  Defendants dispute whether Montgomery Police Department requested plaintiff's personnel file from Daphne, but acknowledge

---

[5] To maintain a claim of retaliation, the alleged adverse action must be "materially adverse," which means "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006).  To be actionable, the adverse action must be "likely to chill the exercise of constitutionally protected speech." Stavropoulos v. Firestone, 361 F.3d 610, 618 (11th Cir. 2004).  The Supreme Court has characterized the anti-retaliation provision as protecting an individual not from all retaliation, but from retaliation that produces injury or harm. Burlington, 126 S.Ct. at 2414. The acts must be material and significant and not trivial. Id. 2405, 126 S.Ct. at 2415.

that in the context of this motion for summary judgment, the court should assume that the personnel file was requested and that Daphne refused that request. (Doc. 65, pp. 2-3).  Because Carpenter testified that Johnson requested a copy of her Daphne personnel file, the court agrees that looking at the evidence in the light most favorable to plaintiff, the court must presume that the Montgomery Police Department requested a copy of plaintiff's personnel file from Daphne Police Department.

Defendants claim that plaintiff has not met her burden of showing a prima facie case because even if they had not refused to provide her personnel file, plaintiff would still not have been re-hired by Montgomery Police Department.  However, the court finds that there is a question of fact concerning this issue.  Although there is evidence that the Montgomery Police Department ultimately voted not to re-hire plaintiff based on her prior poor work performance at the Montgomery Police Department, there is also evidence that she was removed from the hiring process and was not re-hired because they were unable to obtain her work history from Daphne Police Department. Johnson removed plaintiff from the hiring process for failure to complete processing because he was unable to obtain employment information relating to her work history at Daphne Police Department.  Plaintiff testified that Johnson told her that she would be removed from the hiring process if they could not get access to her personnel file. Plaintiff was also reportedly told the same thing by Major Brown.  The fact that plaintiff continued to attempt to get Daphne to release her personnel file and to

15

request that she be reconsidered for re-hire without her personnel file further supports the conclusion that at least plaintiff understood that she had been turned down because Daphne refused to provide her personnel file. Although the Montgomery Police Department had access to plaintiff's work history at Montgomery all along, they did not remove her from the hiring process or deny her application for re-hire until Carpenter spoke with the Daphne Police Department and was told they would not provide all of the requested information. It is at least possible, if not probable, that even if Daphne had provided the requested information plaintiff would have eventually been turned down for re-hire based on her work history. However, from the facts presented, it cannot be determined conclusively what would have happened if she had continued on the normal re-hire process. Montgomery had already interviewed plaintiff and was checking her work performance with other police departments. While it would seem more efficient to check plaintiff's work history at the Montgomery Police Department before checking elsewhere, either that was not done or the initial check did not derail her re-hire. Plaintiff had proceeded past the interview portion of her re-hire process and the court cannot determine conclusively what would have happened if Daphne had not refused to provide her personnel file. The vote that was later held may not have happened or may have had a different result if it was not preceded by Daphne's refusal and plaintiff's re-hire having been previously halted or denied.

16

Defendants assert that even if their refusal to provide her personnel file caused plaintiff to not be re-hired at Montgomery Police Department, there still is no causal connection between plaintiff's protected activity and Daphne's actions.  In order to establish a causal connection, a plaintiff "need only show 'that the protected activity and the adverse action are not completely unrelated.'" Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1457 (11th Cir. 1998) (quoting Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1021 (11th Cir. 1994)).  A plaintiff satisfies this element if she shows her employer knew of the protected activity and there was a close temporal proximity between this awareness and the adverse action. Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir.2004); Wideman, 141 F.3d at 1457.  In this case, defendants contend that the events are too far apart to show a causal link because their alleged refusal to provide information did not occur until April 2010, eleven months after Pelham I was settled.  The temporal proximity must be "very close" if there is no other evidence tending to show causation. Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007).  The Eleventh Circuit has found that "in the absence of any other evidence of causation, a three and one-half month proximity between a protected activity and an adverse employment action is insufficient to create a jury issue on causation." Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir.2006); see also Thomas, 506 F.3d at 1364 (holding that a three to four month period between the protected activity is not enough to show "very close" temporal proximity); Higdon v. Jackson, 393 F.3d 1211,

17

1221 (11th Cir. 2004) ("By itself, the three month period ... does not allow a reasonable inference of a causal relation between the protected expression and the adverse action." citing Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001)).

Plaintiff contends that there is a close temporal proximity in this case because defendants' actions represented their "first opportunity to retaliate." Some courts in this Circuit have held that a causal connection can be established even when the time between events is considerable, where the alleged adverse action was the first opportunity the employer had to retaliate. See e.g. Pittman v. Marshall, 2007 WL 3049563, *7 (M.D. Ala. Oct. 18, 2007) ("However, it is disingenuous to credit the time Pittman did not work because of her termination to a calculation of temporal proximity since she would have had little to no contact with her employer during that time, and her employer, were it motivated by discriminatory animus, would have no reason to retaliate. It is more telling that upon her forced reinstatement by the personnel board on January 3, 2006, and the first opportunity for her employer to possibly retaliate, the alleged series of harassing incidents began within sixteen days."); Dale v. Wynne, 497 F.Supp.2d 1337, 1346 (M.D. Ala. 2007) ("In this instance, a six-week gap is enough to show temporal proximity, particularly because Dale's return to work was the first opportunity Wilson had to retaliate against her."). The Eleventh Circuit has indulged a similar assumption. See Schaaf v. Smithkline

Beecham Corp., 602 F.3d 1236, 1243 (11th Cir. 2010) (where the plaintiff began FMLA leave on January 21, returned to work on April 15, and almost immediately received a demand that she accept a demotion or leave the company, the Court assumed without deciding that the plaintiff had established a prima facie case because "her demotion was temporally proximate to her leave").  Other Circuits have also recognized a "first opportunity" rational. See e.g. Templeton v. First Tenn. Bank, N.A., 424 Fed.Appx. 249, *2 (4th Cir. 2011) ("Because Templeton resigned her employment shortly after she complained of harassment, Templeton was retaliated against, if at all, upon the employer's first opportunity to do so, *i.e.,* when Templeton expressed her interest in being rehired approximately two years after her resignation."); Porter v. Cal. Dep't of Corr., 419 F.3d 885, 895 (9th Cir. 2005) (the years between the plaintiff's protected activity and the adverse-employment actions did not defeat a finding of a causal connection where the defendant did not have the opportunity to retaliate until he was given responsibility for making personnel decisions); Ford v. GMC, 305 F.3d 545, 554-55 (6th Cir. 2002) (finding a causal connection although there was a five-month gap between the protected activity and the adverse-employment actions because the plaintiff was under the control of a different supervisor during the gap).

After reviewing the above case law, the court is persuaded that even though Pelham I was filed more than a year before defendants allegedly refused to provide plaintiff's personnel file, there is sufficient evidence that the events are not completely

unrelated because defendants' alleged retaliation was the first opportunity defendants
had to retaliate against plaintiff.   Accordingly, the court finds that plaintiff has
established a <u>prima facie</u> case of retaliation.

     As explained above, once a plaintiff makes out a <u>prima facie</u> case of retaliation,
"the burden shifts to the defendant to rebut the presumption of retaliation by
producing legitimate reasons for the adverse employment action." <u>Sullivan</u>, 170 F.3d
at 1059.  The employer's burden is exceedingly light." <u>Hamilton</u>, 122 F.Supp.2d at
1280 (quoting <u>Meeks v. Computer Assoc. Int'l</u>, 15 F.3d 1013, 1021 (11th Cir. 1994)
(internal quotations omitted)).  Defendants contend that it did not provide the
Montgomery Police Department with plaintiff's personnel file because the release and
settlement agreement in Pelham I prohibited them from doing so.  Under the Pelham
I agreement, Daphne Police Department was required to give "a neutral job
recommendation" that "shall only include the date of PLAINTIFF'S employment with
the City of Daphne Police Department, PLAINTIFF'S job description, and the rate of
pay PLAINTIFF received." (Doc. 54-10, p. 2).  Plaintiff's contention that the above
quoted provision does not prohibit the disclosure of plaintiff's personnel file is clearly
untenable. It may not have been a "court order" as referenced by Carpenter, but it was
clearly the provision that terminated the lawsuit and was agreed to by both Daphne
and Pelham.   Plaintiff's personnel file contains far more information than is
permitted by the release and settlement agreement.  Additionally, some of that

information is clearly not neutral.  Though the agreement does not specifically mention plaintiff's personnel file, the inclusion of the word "only" in the agreement can only be read to prohibit any information that was not listed in the agreement. Accordingly, the court finds that defendants have met their burden of proffering a legitimate reason for their actions.

Since defendants have offered a legitimate reason, the presumption of retaliation disappears and the burden shifts back to the plaintiff to show that the employer's proffered reasons for taking the adverse action were pretext for prohibited retaliatory conduct. Sullivan, 170 F.3d at 1059.  "At the pretext stage, in order to survive summary judgment, Plaintiff must provide sufficient evidence to allow a reasonable fact finder to conclude, at a minimum, that the proffered reasons were not actually the motivation for the employer's decision." Miller v. Bed, Bath & Beyond, Inc., 185 F.Supp.2d 1253, 1270 (N.D. Ala. 2002) (citing Combs, 106 F.3d at 1538). Plaintiff may do this  "(1) by showing that the employer's legitimate non[retaliatory] reasons should not be believed; or (2) by showing that, in light of all of the evidence, a [retaliatory] reason more likely motivated the decision." Id. (citations omitted).  "This is done by pointing to 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable factfinder could find them unworthy of credence.'" Hamilton, 122 F. Supp.2d at 1281 (quoting Combs, 106 F.3d at 1539).  The ultimate burden of

persuasion remains with the plaintiff at all times in cases involving merely circumstantial evidence. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

In the instant case, the court finds that looking at the evidence in the light most favorable to plaintiff that pretext has been shown.  Defendants' reliance on the Pelham I release can be called into doubt because defendants refused to provide plaintiff's personnel file even though they were provided with an authorization and release form which exonerated them "from any and all liability of every nature and kind growing out of or in anywise pertaining to the furnishing or inspection of such documents, records, and other information or the investigation made by said Department." (Doc. 61-15, p. 4).  Defendants further refused to provide plaintiff's personnel file directly to plaintiff herself, even though defendants' attorney had reportedly advised defendants to provide the file to plaintiff.  The Pelham I release and settlement agreement does not prohibit the Daphne Police Department from releasing the information to plaintiff.  As such, the court finds that a reasonable fact finder could find defendants' proffered reason unworthy of credence.

## **<u>CONCLUSION</u>**

For the reasons stated above, the court finds that defendants' motion for summary judgment (Doc. 53), should be and is hereby **DENIED** as to Count One and **GRANTED** as to Counts Two and Three.  The only claim remaining is the retaliation claim against the City of Daphne.

**DONE and ORDERED** this 29th day of May, 2013.


/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE

23